## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SYDNEY LOCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-00197-TWP-MJD |
| | ) | |
| BROOKE ROLLINS Secretary of the Department | ) | |
| of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Brooke Rollins in her official capacity as the Secretary of the Department of Agriculture ("Defendant") (Filing No. 53). Plaintiff Sydney Lockett ("Lockett") initiated this action alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act by after she was not promoted (Filing No. 1). For the reasons stated below, Defendant's Motion is **granted**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Lockett as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A.     Lockett's Employment with the Natural Resource Conservation Service

The Natural Resource Conservation Service ("NRCS") is the United States Department of Agriculture's ("USDA") primary private lands conservation agency that works voluntarily with producers and communities to find the best solutions to meet their unique conservation and business goals (Filing No. 53-2 at 1).

Most employees in professional, technical, administrative, or clerical positions in the federal government, including the USDA, are paid according to the General Schedule ("GS") scale. *Id*. at 2–3. The GS scale has 15 grades, starting at GS-01 and going up to GS-15. *Id*. Positions from GS-05 to GS-07 are entry-level and administrative positions and GS-08 to GS-12 are mid-level technical and first level supervisory positions. *Id*.

Lockett, an African American woman, was hired by the NRCS in May 2018 as a district conservationist GS-09 ("GS-09") in Greenfield, Indiana (Filing No. 53-1 at 21–22). She had prior experience as a soil conservationist GS-07 in Georgia. *Id*. As a GS-09, Lockett reported to the Planning Team Leader, Benjamin Zuercher ("Zuercher"). *Id*.  She was responsible for carrying out the natural resources program for Hancock County, Indiana (Filing No. 53-6). Her responsibilities as a GS-09 included meeting and conducting outreach programs with farmers and other partners to provide them with technical assistance and assist them with their resource concerns (Filing No. 53-1 at 54–57).

In November 2021, while Lockett was a GS-09, she participated in the 2021 Certified Planners Evaluation (Filing No. 53-7 at 1). This program provides for an independent group of resource management specialists to evaluate an individual's conservation planning skills. *Id*. The state resource conservationist then prepares a final evaluation and recommendation on whether the individual should be awarded the status of Certified Conservation Planner in Indiana based on the individual's evaluation. *Id*.

After participating in the Certified Planners Evaluation, Lockett was not recommended for certification and was instead issued a letter notifying her that she needed to make minor improvements and additional trainings were recommended. *Id*. Specifically, the Evaluation letter stated that Lockett "demonstrated solid knowledge, skill, and ability related to most aspects of

conservation planning, but [she] will benefit from more experience or training in certain areas." *Id*. The letter then listed seven areas for continued improvement. *Id*. at 2–3.

**B.    Events Concerning Lockett's Requested Promotion**

On July 18, 2022, Lockett emailed Jerry Raynor ("Raynor"), her third-line supervisor, because she wanted input from upper management about a promotion from her current GS-09 position to the GS-11 position (Filing No. 53-1 at 84:12–85:2). In her email to Raynor, Lockett expressed her concern that she had been having trouble getting to the GS-11 position for some time (Filing No. 53-9 at 3). She expressed that she constantly asked her supervisor, Zuercher, about promoting her and she never received a straight answer, and that Zuercher told her that "getting [her]certified planner [wa]s just one of the steps to get [her] GS-11."  *Id*. Lockett also wrote that what she was told was constantly changing, and that she had "no clear guidance to get [her] GS-11." *Id*. She expressed that she felt some frustration because she was "a soil con GS-9 in Georgia" and had become a district conservationist but she was  "still being paid a GS-9." *Id*.

Raynor agreed to look into Lockett's concerns and on August 1, 2022, he emailed Kelly Bushong ("Bushong"), the planning team leader for the area that Lockett worked (Filing No. 53-11 at 1). At the time, Bushong was Lockett's acting second-line supervisor and Zuercher's acting first-line supervisor (Filing No. 53-12 at 2). In his email, Raynor asked Bushong to look into Lockett's requests because he was concerned her promotion was being withheld without documentation of her inability to perform the duties listed in the GS-11 job description (Filing No. 53-11 at 1).

On August 12, 2022, Bushong contacted Zuercher regarding Lockett's promotion (Filing No. 53-5 at 26). Bushong asked Zuercher to put together expectations of what Lockett needed to do to reach a GS-11 promotion and "lay out where she is at and what is needed for her to be

promoted." (Filing No. 53-13). At the time Zuercher received this email, the NRCS did not have a promotion guide for the GS-11 position (Filing No. 53-5 at 40:16–22).

Zuercher then prepared a document titled the "Requirements for Promotion from GS-09 to GS-11," which listed seven competencies Lockett needed to meet to be promoted along with a tentative deadline for each competency (Filing No. 53-2 at 3). Bushong and Raynor reviewed the seven competencies and agreed with the requirements. *Id*. Bushong, Raynor, and Zuercher all concurred that Lockett did not meet the requirements for a GS-11 promotion. *Id*.

On August 25, 2022, Zuercher provided Lockett with the Requirements for Promotion from GS-09 to GS-11 document. Four days later, Lockett sent Zuercher an email stating that she disagreed with the requirements (Filing No. 53-16). Specifically, Lockett disputed that she was not meeting the requirements and requested to see the policy requiring her to "do [her] certified planner over again when [she] transfer[red] to another state." *Id*. Lockett expressed that she felt like she had to prove herself to Zuercher to become a GS-11. *Id*.

On September 12, 2022, Zuercher responded to Lockett's email (Filing No. 53-17). In his email, Zuercher provided an attachment to the policy which details the certified planner requirements. *Id* Zuercher then provided the following excerpt of the policy:

> **What about planners who transfer from or are detailed from another state?**
> Conservation planners who transfer from or are detailed from another state to work in Indiana will have their work reviewed by an employee who is a Level III Certified Conservation Planner or Level IV Certified Conservation Planner in Indiana. The reviewer will typically be the area Resource Management Specialist where the work will be done but may be a designee if appropriate. Certified Planners transferring to Indiana from another state will need to complete Indiana's Certified Planner Evaluation Course, at a minimum.

*Id*. Zuercher continued stating, "[j]ust as the policy requires, we had you participate in the Certified Planner Evaluation . . . you did not demonstrate all of the skills needed to become a certified planner in Indiana . . . [and] continue to not demonstrate all of the required skills and knowledge

to become certified." *Id*. Zuercher then explained to Lockett that though she failed to become certified, this was not the hold up for her promotion. *Id*. Instead, Zuercher stated that Lockett needed to demonstrate the items identified in the Requirements for Promotion from GS-09 to GS-11 document for her to be promoted from GS-09 to GS-11. *Id*.

**C.**     **Zuercher Presents Lockett with a Letter of Instruction**

Zuercher, held biweekly meetings with his employees, including Lockett, to discuss performance, workload, trainings, progress, and any other concerns they had (Filing No. 53-5 at 20–21). Though Lockett disputes the timing, the record reflects that Zuercher and Lockett had biweekly meetings sometime on or before September 7, 2022 (Filing No. 53-19 at 1).

On October 11, 2022, Zuercher provided Lockett with a Letter of Instruction via email after she did not attend their scheduled biweekly meeting on September 7, 2022 (Filing No. 53-18 at 1). The Letter of Instruction was issued to set "supervisory expectations for communication of absences and meeting attendance." *Id*. The Letter of Instruction stated that the biweekly meetings were not optional, as they were for employee development purposes. *Id*. Zuercher also explained that the Letter of Instruction was not a disciplinary action, but any further absences could result in disciplinary action up to and including removal from her position. *Id*. at 2. Lockett responded by saying she "would not sign the Letter of Instruction" and that she "cho[]se not to commit to the biweekly meetings" as she could not guarantee her presence (Filing No. 53-19 at 4).

Three days later, Lockett sent an email to Zuercher, Bushong, Raynor, and Roger Kult ("Kult") in which she apologized for her previous blunt response. *Id*. at 1. In her email, Lockett stated that Zuercher was wrong to issue her a Letter of Instruction because she missed the meeting due to her being at a farm and viability training which was placed on her calendar weeks before

the meeting. *Id*. Lockett also stated that Zuercher never told her the biweekly meetings were mandatory. *Id*.

On October 26, 2022, Zuercher emailed Lockett a revised draft of the document titled "Requirements for Promotion from GS-09 to GS-11" (Filing No. 53-20). In the revised document, Zuercher crossed out all deadlines Lockett had failed to meet for the seven competencies. *Id*. Zuercher also certified that Lockett had fully satisfied the fourth competency. *Id*. Zuercher noted that Lockett had met some parts of the third competency but stated that she needed a further understanding to fully satisfy it. Lastly, Zuercher added to the sixth competency stating that Lockett needed to "[l]earn to implement the ability to sort and filter the data in [her] workload tracking tool" to satisfy the competency. *Id*. at 3.

The following day, Lockett responded to Zuercher's email stating, "I was told on 8/25/2022 to complete the list for Requirements for Promotion from GS-9 to GS-11. I will be promoted to a GS-11. I was never told that additional items or agreed to have additional items added to this promotion list. With that being said this proves that there is not a definite end to this process now." (Filing No. 53-21 at 1). Lockett also acknowledged that the items that Zuercher incorporated into the revised draft of the Requirements for Promotion document "were important to learn" and that she was "taking steps to learn them better to help her customers." *Id*.

In November 2022, Lockett began reporting to a new Planning Team Leader, Colt VanNatta ("VanNatta") (Filing No. 53-37 at 1). Shortly thereafter, she expressed to VanNatta her desire to be promoted to GS-11. *Id*. VanNatta was new and decided to wait until his new supervisor, William Chris Lee ("Lee"), was onboarded in January 2023 before making any decisions on promotions. *Id*. However, once Lee was onboarded, VanNatta met with Lee to discuss the promotion of employees. VanNatta recommended Lockett for a promotion to GS-11 based on her work and

performance which Lee approved. *Id*. at 2. Lockett was promoted to GS-11 effective March 26, 2023. *Id*.

### D.  Lockett's Equal Employment Opportunity Commission Grievances

On August 24, 2022, Lockett filed a grievance with the Equal Employment Opportunity Commission ("EEOC") office in which she largely complained about Zuercher not promoting her into a district conservationist GS-11, but the next day—because she feared retaliation—she withdrew the grievance. (Filing No. 53-1 at 90–98). On October 12, 2022, Lockett initiated another EEOC grievance, alleging race discrimination and reprisal for management's failure to promote her to a GS-11 level. (Filing No. 53-33 at 1), and on November 10, 2022, she was issued a Notice of Right to File a Formal Complaint letter. (Filing No. 53-33 at 1). That same day, Lockett filed a formal EEOC Complaint.

On April 24, 2023, the Office of the Assistant Secretary for Civil Rights issued Lockett a finding that Defendant did not engage in discrimination, harassment, or reprisal. Lockett appealed the Final Agency Decision to the U.S. Equal Employment Opportunity, Office of Federal Operations ("OFO") and on October 31, 2023, the OFO issued a Decision affirming the Final Agency Decision.

## II.      LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v.*

*Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Lockett alleges that in violation of Title VII, Defendant discriminated against her because on her race when Defendant failed to promote her from GS-09 to GS-11. She further alleges that the Defendant retaliated against her by issuing a "Letter of Instruction" after she initiated an EEO complaint against her immediate supervisor, Zuercher. (Filing No. 1 at 5). Defendant argues that

Lockett's claims are time barred and her race discrimination and retaliation claims fail as a matter of law (*See* Filing No. 54). The Court will address each argument in turn.

## A.    __Whether Lockett's Claims are Time-Barred__

Defendant contends that Lockett failed to initiate EEOC contact within forty-five days of the alleged discrimination and thus her claims are barred. *Id*. at 20 (citing 29 C.F.R. § 1614.105(a), (b), and *Smith v. Potter*, 445 F.3d 1000, 1006–07 (7th Cir. 2006)). Defendant argues that Lockett's race discrimination and retaliation claims arise from the date Zuercher denied her promotion and presented her with the Requirements for Promotion from GS-09 to GS-11 document: August 25, 2022, and thus, her initiation of EEOC contact on October 12, 2022, was outside the forty-five days within which she was required to do so. *Id*. In her Response, Lockett argues that Defendant's reliance on the August 25, 2022 date is misplaced because the denial of promotion and issuance of the Letter of Instruction occurred on October 11, 2022 (Filing No. 59 at 16).[1]

First, "[f]ederal employees who seek to assert Title VII claims must exhaust the administrative remedies available to them in a timely fashion before they may assert their claims in a lawsuit." *Ester v. Principi*, 250 F.3d 1068, 1072 (7th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Rennie v. Garrett*, 896 F.2d 1057, 1059 (7th Cir. 1990)). "29 C.F.R. § 1614.105 sets forth that federal employees 'who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must . . . initiate contact with a Counselor [from the EEOC] within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.' Failure to do so equates to the violation of a statute of limitations and,

---

[1] Lockett argues the issuance of the Letter of Instruction occurred on October 10, 2022, but the parties' briefing, in conjunction with the fact that October 10, 2022, was a federal holiday, makes clear that the Letter of Instruction was issued on October 11, 2022.

notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII of the Civil Rights Act of 1964." *Smith*, 445 F.3d at 1006–1007 (quoting 29 C.F.R. § 164.105), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Accordingly, Lockett must have initiated EEOC contact within forty-five days of the alleged discrimination.

While Lockett argues that she was denied a promotion on October 11, 2022, the record does not support this assertion. Lockett expressly admitted that she was denied a promotion in August stating, "Zuercher denied Plaintiff's request for a promotion in late August 2022." (Filing No. 59 at 10). In addition, Lockett's own Complaint states, "[i]n or around July/August 2022, Lockett initiated a complaint against Zuercher with her [Equal Employment Opportunity] office asserting her concerns that Zuercher's refusal to promote her was motivated by her race." (Filing No. 1 at 4). Further, Lockett states that "Zuercher first became aware that Ms. Lockett requested the promotion to GS-11 on August 12, 2022[.]" (Filing No. 59 at 9). It is undisputed that Zuercher sent Lockett the Requirements for Promotion from GS-09 to GS-11 document outlining the seven competencies she would need to complete before she would be promoted on August 25, 2022 (Filing No. 53-15). The court should not credit assertions that are contradicted by the record. *See Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"). Accordingly, because Lockett's assertion that she was denied a promotion on October 11, 2022 is not supported by the record, the Court finds that the denial of promotion occurred on August 25, 2022.

For Lockett to pursue a discrimination claim based on the denial of promotion occurring on August 25, 2022, she would have had to initiate EEOC contact by October 6, 2022.[2] Lockett first initiated EEOC contact the day prior to her denial on August 24, 2022, but then withdrew her complaint on August 25, 2022. Lockett then initiated EEOC contact for the August 25, 2022, denial on October 12, 2022. Accordingly, her claim concerning the August 25, 2022, denial of promotion is time-barred. *Smith*, 445 F.3d at 1006–1007.

Lockett argues that her withdrawal of her EEOC complaint on August 25, 2022, is irrelevant because she is not pursuing claims based on events that occurred before October 11, 2022, but rather on the discrete acts of discrimination and retaliation that occurred on that date (Filing No. 59 at 17). However, as the Court stated above, the denial of Lockett's promotion occurred by her own admission on August 25, 2022. Thus, unless the denial amounted to a continuing violation, which Lockett does not argue but the Court will briefly address anyways, Lockett's claims will be time-barred.

"Acts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002) (internal quotation marks omitted). "In other words, a plaintiff who feels discriminated against by a discrete act, but fails to timely file charges on that act, cannot later reach back to those events when the statute of limitations expires in order to form a continuing violation claim." *Id*.

The Supreme Court, in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), held that "discrete . . . acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify[,]" and each "constitutes a separate actionable 'unlawful

---

[2] October 6, 2022, is forty-five days after August 25, 2022.

employment practice.'" *Id*. at 110–114. Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. Here, the record is clear that the denial of the promotion occurred on August 25, 2022. While the Letter of Instruction was issued on October 11, 2022, the issuance of the Letter does not create a continuing violation between it and the denial of promotion. Accordingly, Lockett's failure to promote claims are time-barred.

Second, Lockett waived any claim concerning the issuance of the Letter of Instruction. The approved Case Management Plan specifically stated,

> On or before November 22, 2024, and consistent with the certification provisions of Fed. R. Civ. P. 11(b), the party with the burden of proof shall file a statement of the claims or defenses it intends to prove at trial, stating specifically the legal theories upon which the claims or defenses are based. A party's failure to file a timely statement of claims or defenses may result in the waiver of the party's claims or defenses. A party's failure to include in the party's statement of claims or defenses a claim or defense upon which the filing party has the burden of proof may result in the waiver of the omitted claim or defense.

(Filing No. 18 at 5). Lockett timely filed her Statement of Claims and stated that she "does not intend to proceed with her claim that Defendant retaliated against her by issuing her a Letter of Instruction." (Filing No. 51). Accordingly, Defendant did not address retaliation in her summary judgment briefing. However, in her Response to the Motion for Summary Judgment, Lockett attempts to pursue a retaliation claim based on the Letter, while simultaneously acknowledging that "[n]otably, Ms. Lockett certified that she does not intend to proceed with her claim that [Defendant] retaliated against her by issuing her a [Letter of Instruction]." (Filing No. 59 at 16). Lockett then proceeds to argue that her claims are not time-barred because she was denied a promotion, and the Letter of Instruction was issued on October 11, 2022. *Id*.

Lockett may not now attempt to revive her claims concerning the Letter of Instruction to preserve her failure to promote claim as timely. As previously stated, the two claims are discrete, and, in any event, Lockett's statement that she does not intend to pursue her claim concerning the Letter of Instruction only to attempt to use that claim as an avenue to circumvent the requirement that she initiate EEOC contact within forty-five days of the alleged discrimination goes against fundamental principles of the Statement of Claims—notice, fairness, and efficiency. *Dysland v. Shetler Moving & Storage Inc.*, 3:21-4, 2022 WL 18540516, at *2 (S.D. Ind. Sept. 7, 2022).

Finally, Lockett only brings up the Letter of Instruction in her argument that her claims are timely. But she fails to develop the claim further in her Response. Because Lockett stated that she does not intend to pursue her claim concerning the issuance of the Letter of Instruction, such claim is waived.

For the reasons stated above, Lockett's claims concerning the denial of promotion on August 25, 2022, are barred by 29 C.F.R. § 164.105. *Smith*, 445 F.3d 1006–1007. Lockett also waived her claim concerning the issuance of the Letter of Instruction. Accordingly, the Motion for Summary Judgment is **granted**.

## B.    <u>Discrimination Claim</u>

Even if Lockett's claims were timely, her discrimination and retaliation claims fail on the merits as well. There are two pathways for Lockett to succeed on a discrimination claim. First, she can "establish a dispute of material fact under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Gamble v. Cnty. Of Cook*, 106 F.4th 622, 625–626 (7th Cir. 2024). Second, she can succeed if the evidence, when considered as a whole, would permit a reasonable factfinder to conclude that Defendant discriminated against Lockett because of her race. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

### 1. *McDonnell Douglas* **Approach**

For Lockett to succeed on a failure to promote claim under the *McDonnell Douglas* standard, she must first make out a prima facie case by producing "evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Comty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016). If she does this, Defendant must then show "a legitimate nondiscriminatory reason for the employment action"; if Defendant shows this, then Lockett must show that Defendant' "stated reason is a pretext." *Simpson v. Beaver Dam Comty. Hosps., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015) (citing *McDonnell Douglas*, 411 U.S. at 802–04)).

Defendant argues that Lockett fails to meet the second element to establish a prima facie case of racial discrimination, because she was not meeting the performance expectations of the GS-11 position. (Filing No. 54 at 22). In Response, Lockett argues that she was fully successful on numerous performance reviews including one review which indicated "GS-11" at the top (Filing No. 59 at 18 (citing Filing No. 53-14)). In Reply, Defendant argues that Zuercher clarified that his performance review was based on the GS-09 standard even though the review stated "GS-11" at the top (Filing No. 68 at 10).

Whether Lockett had a successful performance review at the GS-11 grade may be a disputed fact, but it is not material. Both parties agreed that although Lockett was placed in the GS-11 grade when she first became employed with the NRCS in Indiana, the NRCS did this by mistake (Filing No. 54 at 3, Filing No. 59 at 9). Zuercher testified that he evaluated Lockett on a GS-09 scale even though one of the performance reviews mistakenly listed her pay status as a GS-11 (Filing No. 53-5 at 58:6–25).

In any event, Lockett emailed Raynor requesting that he help her with being promoted from a GS-09 to GS-11 (Filing No. 53-9 at 3). Raynor agreed to look into her concerns and told her to have Zuercher put in writing what was required of her for the promotion (Filing No. 53-10 at 2). Then, at the request of Raynor and Bushong—Zuercher's supervisors—Zuercher put together the list of competencies he believed Lockett needed to demonstrate to be promoted. Both Bushong and Raynor then reviewed and agreed with the seven competencies and agreed with Zuercher's decision not to promote Lockett (Filing No. 53-5 at 17:20–18:8, Filing No. 53-10 at 4).

Lockett fails to show or even argue that she met the competencies that Zuercher, Bushong, and Raynor agreed upon to be promoted. Lockett argues that she was fully successful on two performance reviews, however, as previously stated, those performance reviews were based on the GS-09 standard. Such performance reviews do not show that she was qualified for the GS-11 position. Indeed, the performance reviews indicate only that Lockett performed the GS-09 position successfully.

To make out a prima facie case of discrimination for her failure to promote claim, Lockett is required to show that she was qualified for the GS-11 position. *Riley*, 829 F.3d at 892. The performance reviews do not satisfy that burden. Accordingly, even if Lockett's claims were timely, she has not demonstrated a prima facie case of discrimination under *McDonnell Douglas.*

### 2. <u>The Evidence as a Whole</u>

Alternative to the *McDonnell Douglas* framework, Lockett "may prove discrimination in a holistic fashion, by proffering 'direct or circumstantial evidence of intentional racial discrimination.'" *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (quoting *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016)). Under *Ortiz*, the Court

asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [race] . . . caused the discharge or other adverse employment action" at issue. 834 F.3d at 765.

The Seventh Circuit has "identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Community Sch.*, 953 F.3d 923, 929 (7th Cir. 2020). Neither party argues under this framework, but the parties' briefing warrants a discussion under this standard, nonetheless.

### a.  **Ambiguous or Suggestive Comments or Conduct**

Lockett fails to produce evidence of any ambiguous or suggestive comments or conduct. Zuercher created a list of seven competencies, which Bushong and Raynor agreed with, that Lockett needed to demonstrate before being promoted. Even though Lockett believed Zuercher changed those competencies in his updated list of competencies, (Filing No. 53-20), he merely crossed out deadlines, indicated that she had successfully satisfied some of the competencies, and provided further clarification on what Lockett needed to do to fully satisfy competencies three and six. *Id*. Accordingly, there is no evidence of ambiguous or suggestive comments or conduct.

### b.  **Better Treatment of Similarly Situated Individual(s)**

Defendant argues that Lockett has failed to produce evidence that similarly situated individuals were promoted over Lockett (Filing No. 54 at 23–25). Specifically, Defendant argues that Kris Green ("Green"), a Caucasian male who Zuercher promoted to GS-11, was more qualified because the independent Resource Management Specialists evaluation recommended that Green be certified while Lockett was not recommended for certification. Defendant also argues that the other two individuals Zuercher promoted, Ashley Rowland ("Rowland") and Alejandra Gonzalez-

Lopez ("Gonzalez-Lopez"), were not similarly situated because they were promoted approximately two years after Lockett changed supervisors, and by the time they were promoted, Zuercher had a new supervisor, William Chris Lee ("Lee"), who encouraged the expediting of employee promotions. *Id*.

In Response, Lockett argues that while Green was recommended for certification while Lockett was not, Zuercher told Lockett that her lack of certification was not the thing holding up her promotion (Filing No. 59 at 18). Lockett additionally argues that Zuercher never provided Green with a document laying out the requirements for his promotion like he did with Lockett. *Id*. at 19. Lockett contends that Zuercher's decisions to promote Rowland and Gonzalez-Lopez warrant careful scrutiny because the timing of the change in leadership and promotion guidance given to Zuercher is suspicious. Upon careful scrutiny, the Court is not persuaded.

The Court finds that none of the above individuals were similarly situated to Lockett. First, the only evaluation of Green produced in this case is the Resource Management Specialists evaluation where Green was not only recommended for certification but "demonstrate[d] excellent knowledge, skill, and ability related to most critical aspects of conservation planning." (Filing No. 53-23 at 1). Alternatively, the same independent evaluation found that Lockett "demonstrate[d] solid knowledge, skill, and ability related to most aspects of conservation planning, but [she] will benefit from more experience or training in certain areas" and did not recommend her for certification (Filing No. 53-7 at 1). This disparity in qualifications and skill level indicates that Lockett and Green were not similarly situated.

Further, while Lockett is correct that Green was not presented with the Requirements for Promotion from GS-09 to GS-11 document, the list was only created because Lockett reached out to Zuercher's supervisor, Raynor, and asked him if he could help and provide guidance on what

was expected to for promotion. Then, in an attempt to help, and so that Lockett was not denied a promotion without documentation, Raynor contacted Bushong who in turn requested that Zuercher "put together expectations for promotion GS-11 for Sydney" (Filing No. 53-13). Only then did Zuercher create the list of seven competencies for Lockett. The designated evidence shows that the only reason Lockett received the seven competencies and Green did not is because Lockett asked for them. Such circumstances do not indicate that Zuercher treated Lockett worse because of her race.

Second, while suspicious timing may be circumstantial evidence of intentional discrimination, *see Huff v. UARCO Inc.*, 122 F.3d 374, 380 (7th Cir. 1997), suspicious timing alone is usually not enough. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Here, Lee became Zuercher's new supervisor shortly after Zuercher decided to deny Lockett's promotion, but there is nothing more to indicate intentional discrimination. Lee became Zuercher's new supervisor in January 2023 and encouraged Zuercher to expedite the promotion of employees. The individuals Lockett argues were similarly situated were not recommended for promotion for at least another year and nine months—October 2024 for Rowland and November 2024 for Gonzalez-Lopez (Filing No. 53-2 at 6–7). Accordingly, neither the timing of Lee becoming Zuercher's supervisor, nor the timing of Zuercher's recommendation that Rowland or Gonzalez-Lopez be promoted, are suspicious.

### c.  Dishonest Justifications

Lockett argues the stated reasons for the denial of promotion were pretextual and dishonest because Zuercher "created his own guidelines, specifically a 'Requirements for Promotion' document" for her (Filing No. 59 at 20). Lockett also argues that Zuercher provided a list of requirements for promotion for another African American woman, Kierra Meadious ("Meadious"),

and Meadious also was denied promotions under Zuercher's supervision from September 2021 to November 2022. Thus, Zuercher engaged in a "pattern of discrimination" and his reasons are pretextual *Id*. at 21.

As discussed above, Lockett received the Requirements for Promotion from GS-09 to GS-11 because she requested documentation as to why she was not being promoted. Zuercher's non-discriminatory reason for providing Lockett the document was because both Lockett and his supervisor requested that he do so. These circumstances do not indicate pretext. Further, Meadious did not receive a list of competencies required for promotion. Rather, she received the national guide for promotions from a GS-07 to GS-09 which was not available for Lockett because Lockett was seeking a promotion from a GS-09 to GS-11—a promotion which had no national guide to follow. Accordingly, Zuercher's stated reason of providing Lockett with the Requirements for Promotion from GS-09 to GS-11 document—because Lockett requested the document—is not pretextual.

When viewing the evidence as a whole, as it is required to do under *Ortiz*, the Court finds that no reasonable jury could conclude that Lockett was denied a promotion because of her race. Accordingly, even if Lockett's claims were not time-barred, they would fail under either the *McDonnell Douglas* framework or the *Ortiz* standard and the Motion for Summary Judgment is **granted** on these grounds as well.

## C.    Retaliation Claim

42 U.S.C. § 2000e-3(a) "prohibits an employer from retaliating against an employee because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (internal quotation marks omitted). "To defeat summary judgment, [a plaintiff] must offer evidence from

which a reasonably jury could find: '(1) [she] engaged in an activity protected by the statute; (2) [she] suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.'" *Id.* (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)).

Lockett alleges that Zuercher retaliated against her for initiating EEOC contact by denying her a promotion (Filing No. 59 at 22).[3] "Knowledge of the protected activity is necessary to show causation for a retaliation claim." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). For a retaliation claim to reach a jury, "the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity . . . it is not sufficient that a decision-maker could have or even should have known about the employee's complaint." *Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512-513 (7th Cir. 2021).

Lockett initiated EEOC contact on August 24, 2022, and then withdrew her complaint the following day. On August 25, 2022, Zuercher denied her a promotion from GS-09 to GS-11. Lockett then initiated EEOC contact on October 12, 2022. Lockett has produced no evidence that Zuercher knew about her initiating EEOC contact on August 24, 2022 or filing an EEOC complaint until he was contacted by an EEOC investigator on November 1, 2022, and all alleged retaliation occurred before this date (Filing No. 53-2 at 5). *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566–67 (7th Cir. 2019) (finding no "causal connection" between protected activity and adverse action because supervisors were not aware of plaintiff's protected activity).

Defendant has presented well-documented evidence showing legitimate, non-retaliatory reasons for denying Lockett's promotion. Because there is no evidence Zuercher knew of Lockett's protected activity, her retaliation claim fails, and the Motion for Summary Judgment is **granted** on these grounds as well.

---

[3] Lockett also argues in her Response that she was retaliated against by Zuercher when he issued her the Letter of Instruction. However, as previously discussed, Lockett waived all claims concerning the Letter of Instruction.

## IV.    <u>CONCLUSION</u>

For the reasons explained above, Defendant' Motion for Summary Judgment (<u>Filing No. 53</u>) is **GRANTED**. Final Judgment shall issue separately.

**SO ORDERED**.

Date:    11/7/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Adriana Figueroa
DOJ-USAO
adriana.figueroa@usdoj.gov

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Paul Anthony Logan
JOHN H. HASKIN & ASSOCIATES, LLC
plogan@jhaskinlaw.com

Matthew Smith
Employment Law Office of John H Haskin & Assoc LLC
msmith@jhaskinlaw.com